IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

NUVASIVE, INC.,                                )
                                               )
                    Plaintiff,                 )
                                               )
        v.                                     )   C.A. No. 15-286 (LPS) (CJB)
                                               )
NEUROVISION MEDICAL PRODUCTS,                  )
INC.,                                          )
                                               )
                    Defendant                  )

**NUVASIVE, INC.'S BRIEF IN OPPOSITION TO
DEFENDANT NEUROVISION MEDICAL PRODUCTS, INC.'S
MOTION TO STAY THE CASE PENDING *INTER PARTES* REVIEW**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Thomas C. Grimm (#1098)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
tgrimm@mnat.com
*Attorneys for NuVasive, Inc.*

OF COUNSEL:

John S. Kyle
KYLE HARRIS LLP
450 B Street, Suite 1410
San Diego, CA  92101
(619) 600-0086

May 11, 2015

## TABLE OF CONTENTS

Page

INTRODUCTION ........................................................................................................1

NATURE AND STAGE OF PROCEEDINGS .........................................................2

SUMMARY OF ARGUMENT ..................................................................................2

FACTUAL BACKGROUND.....................................................................................4

ARGUMENT ..............................................................................................................6

    I.    A STAY IS NOT "AUTOMATIC."....................................................8

    II.    THE COURT SHOULD EXERCISE ITS DISCRETION NOT TO STAY THE CASE AT THIS TIME. ......................................................9

        A.    NMP's Motion to Stay Is Premature........................................10

        B.    A Stay Will Not Simplify this Litigation. ..................................10

            1.    An IPR Would Not Simplify Important Invalidity Issues........................................................................................11

            2.    An IPR Would Not Simplify Non-Infringement. ..........13

        C.    A Stay Would Unfairly Prejudice NuVasive and Reward NMP's Tactical Maneuvering....................................................14

    III.    THIS CASE PRESENTS DIFFERENT ISSUES THAN THE CALIFORNIA ACTION. ..............................................................16

CONCLUSION.........................................................................................................17

<u>TABLE OF AUTHORITIES</u>

Page(s)

**Cases**

*Ariosa Diagnostics v. Isis Innovation Ltd.*,
    No. IPR2012-00022, slip op. (Feb. 12, 2013)............................................................9

*Automatic Mfg. Sys., Inc. v. Primera Tech., Inc. (Automatic Mfg. I)*,
    No. 6:12-cv-1727-Orl-37DAB, 2013 U.S. Dist. LEXIS 67790,
    2013 WL 1969247 (M.D. Fla. May 13, 2013)............................................7, 11, 13

*Card-Monroe Corp. v. Tuftco Corp.*,
    No. 1:14-cv-292, 2015 U.S. Dist. LEXIS 31459 .................................................12

*Comcast Cable Commc'ns Corp., LLC v. Finisar Corp.*,
    No. C-06-04206-WHA, 2007 U.S. Dist. LEXIS 103309, 2007 WL 1052883
    (N.D. Cal. Apr. 5, 2007) .........................................................................................6

*Cooper Notification, Inc. v. Twitter, Inc.*,
    No. 09-865, 2010 U.S. Dist. LEXIS 131385, 2010 WL 5140573
    (D. Del. Dec. 13, 2010)..........................................................................................15

*Davol, Inc. v. Atrium Med. Corp.*,
    C.A. No. 12-958-GMS, U.S. Dist. LEXIS 84533,
    2013 WL 3013343 (D. Del. June 17, 2013)............................................... 11-12, 16

*FMC Corp. v. Summit Agro USA, LLC*,
    2014 U.S. Dist. LEXIS 105304, 2014 WL 3703629 (D. Del. July 21, 2014) ........16

*Lifewatch Servs., Inc. v. Medicomp, Inc.*,
    No. 6:09-cv-1909-Orl-31DAB, 2010 U.S. Dist. LEXIS 36194,
    2010 WL 963202 (M.D. Fla. Mar. 16, 2010) ...................................................7, 11

*McRo, Inc. v. Bethesda Softworks LLC*,
    2014 U.S. Dist. LEXIS 60313 (D. Del. May 1, 2014)........................................7, 10

*Netlist, Inc. v. Smart Storage Sys., Inc.*,
    No. 13-cv-589-YGR, 2014 U.S. Dist. LEXIS 116979, 2014 WL 4145412
    (N.D. Cal. Aug. 21, 2014)..........................................................................................7

*Nippon Steel & Sumito Metal Corp. v. POSCO*,
    C.A. No. 12-2429 (DMC), 2013 U.S. Dist. LEXIS 62710 (D.N.J. May 2,
    2013) ................................................................................................................. 14-15

*Personalized User Model, L.L.P. v. Google, Inc.*,
    C.A. No. 09-525-LPS, 2012 U.S. Dist. LEXIS 155815,
    2012 WL 5379106 (D. Del. Oct. 31, 2012) ...........................................................16

*Procter & Gamble Co. v. Kraft Foods Global, Inc.*,
  549 F.3d 842 (Fed. Cir. 2008)..................................................................6

*SenoRx, Inc. v. Hologic, Inc.*,
  2013 U.S. Dist. LEXIS 8044, 2013 WL 144255 (D. Del. Jan. 11, 2013).........................13-14

*Slip Track Systems, Inc. v. Metal Lite, Inc.*,
  159 F.3d 1337 (Fed. Cir. 1998).................................................................11

*SoftView LLC v. Apple Inc.*,
  2012 U.S. Dist. LEXIS 104677, 2012 WL 3061027 (D. Del. July 26, 2012) ........................13

*Soverain Software LLC v. Amazon.com, Inc.*,
  356 F. Supp. 2d 660 (E.D. Tex. 2005)...........................................................6

*Straight Path IP Group, Inc. v. Vonage Holdings Corp.*,
  No. 14-502 (JLL) (JAD), 2014 U.S. Dist. LEXIS 121328, 2014 WL 4271633
  (D.N.J. Aug. 28, 2014)........................................................................7, 10

*Trover Group, Inc. v. Dedicated Micros USA*,
  No. 2:13-CV-1047-WCB, 2015 U.S. Dist. LEXIS 29572
  (E.D. Tex. Mar. 11, 2015).....................................................................10

*TruePosition, Inc. v. Polaris Wireless, Inc.*,
  C.A. No. 12-646-RGA/MPT, 2013 U.S. Dist. LEXIS 150764,
  2013 WL 5701529 (D. Del. Oct. 21, 2013) .....................................................12

*VirtualAgility Inc. v. Salesforce.com, Inc.*,
  759 F.3d 1307 (Fed. Cir. 2014)...............................................................15

*Viskase Corp. v. Am. Nat'l Can Co.*,
  261 F.3d 1316 (Fed. Cir. 2001*)*...............................................................6

**Other Authorities**

U.S. Patent No. 5,024,228 (issued Jun. 19, 1991) ...............................................4-5

U.S. Patent No. 8,476,844 (issued Jul. 2, 2013) .............................................. *passim*

U.S. Patent No. 8,634,894 (issued Jun. 18, 2013). ........................................... *passim*

**Rules and Statutes**

35 U.S.C. § 112.................................................................................12

35 U.S.C. § 311.................................................................................13

35 U.S.C. § 314...............................................................................2, 10

35 U.S.C. § 315................................................................................................. 3, 8-9

35 U.S.C. § 316....................................................................................................2

Fed. R. Civ. P. 13(a) ............................................................................................8

## INTRODUCTION

This is a patent case.  In reality, so is the trade secret case Neurovision Medical Products, Inc. ("NMP") filed in California state court (the "California Action").  Tellingly, in the California Action, NMP identified its alleged trade secrets in part as:

- "Claims 1 through 7, as set forth in Patent No. US 8,467,844 B2;" and

- "Claims 1 through 19, as set forth in Patent No. U.S. 8,634,894 B2." (Kyle Decl. Ex. A at 1.)[1]

Indeed, the California court found that the only trade secrets NMP had adequately articulated were the claims of the two patents: "[I]t appears that the alleged trade secrets are the patent claims. . ."  (Kyle Decl. Ex. B at 2.)  Of course, it is black-letter law that NMP cannot claim to have both trade secret protection and patent protection for the claims of the two patents at issue in this case.  But rather than file a patent case, NMP tried to make a trade-secret-case silk purse out of a patent-case sow's ear.

When it became clear that NMP was attempting to avoid the real issue of patent infringement, NuVasive, Inc. ("NuVasive") properly brought the case to this Court, which is the only tribunal currently considering disputes between NMP and NuVasive that has the jurisdiction and authority to afford complete relief.[2]  Accordingly, this Court should decline to stay this action for the following reasons:

---

[1]     "Kyle Decl." refers to the Declaration of John Kyle in Support of NuVasive, Inc.'s Brief in Opposition to Defendant Neurovision Medical Products, Inc.'s Motion to Stay the Case Pending Inter Partes Review, filed concurrently herewith.

[2]     The trademark case NMP mentions in its brief is entirely irrelevant.  Aside from commonality of parties, that case is entirely unrelated to the issues pending before the Patent Trial and Appeals Board ("PTAB") and to the issues before this Court on this Motion and in this case.  Moreover, that case is currently on appeal to the Ninth Circuit.  NuVasive previously prevailed on an appeal of a prior jury verdict in that case and is

(Continued . . .)

- A stay would be premature where NMP has yet to either admit or deny NuVasive's allegations of non-infringement of U.S. Patent No. 8,634,894 (the "'894 Patent");

- A stay would be premature because the PTAB has yet to institute NuVasive's *inter partes* review ("IPR") of '894 Patent;

- A stay would not lead to meaningful simplification of the issues in this case;

- The California state court cannot decide issues of non-infringement and invalidity in the California Action; and

- NMP seeks a tactical advantage inasmuch as it seeks to avoid taking a position on non-infringement while it continues to use its specious allegations to disparage NuVasive in the marketplace.

<u>NATURE AND STAGE OF PROCEEDINGS</u>

NuVasive filed this action on March 31, 2015.  (D.I. 1.)  Rather than answering NuVasive's complaint, NMP filed a Motion to Stay the Case Pending Inter Partes Review on April 24, 2015.  (D.I. 13.)  NuVasive filed a petition for *inter partes* review (IPR) as to the '894 Patent, one of the two patents at issue in this case, on December 23, 2014.  (*Id.* at 1.)  The Patent Trial and Appeal Board (PTAB) has until July 21, 2015 to decide whether or not to institute an IPR on the '894 patent, and even if the PTAB institutes an IPR, it need not issue a final decision in the IPR for another year after that.  35 U.S.C. §§ 314, 316.  This is NuVasive's brief in opposition to NMP's Motion to Stay.

<u>SUMMARY OF ARGUMENT</u>

The Court should deny NMP's Motion to Stay because a stay is premature, would not meaningfully simplify the issues in this case, and would prejudice NuVasive while rewarding NMP's questionable tactical maneuvering.

---

(. . . continued)

confident that the Ninth Circuit will once again reverse and remand the verdict NMP touts in its opening brief.

NMP's Motion is premature because NMP cannot rely on 35 U.S.C. section 315 because it has not yet responded to NuVasive's allegations of non-infringement and because the PTAB has not yet decided whether to institute IPR proceedings for the '894 Patent. Indeed, the PTAB may not make any such decision until July 21, 2015—three months from the date on which NMP filed its Preliminary Response to the IPR. In the meantime, NMP will avoid having to take a position on the critical issues before this Court and before the California state court—whether Patent No. 8,476,844 (the "'844 Patent") and/or the '894 Patent are invalid, and whether NMP alleges that NuVasive practices any claims of those patents. NuVasive submits that NMP cannot truthfully allege that NuVasive infringes *any* claims or the '844 and/or '894 Patents. That is precisely why NMP engaged in its trade-secret shell game, accusing NuVasive of misappropriation of trade secrets rather than infringement. If NuVasive does not practice any of the claims (which NMP admits comprise is "trade secrets" and which the California court found were the only trade secrets NMP could adequately identify), or if the '844 and '894 Patents are invalid, then NMP's trade secret case is a sham. Thus, resolution of NuVasive's Complaint before this Court could eliminate duplicative and wasteful litigation in California state court. In contrast, the as yet un-instituted IPR proceeding will not resolve issues of non-infringement at all. In short, by seeking to stay the case now, NMP is simply trying to avoid taking a position regarding non-infringement—an issue that could resolve all three matters in one stroke.

Even if the PTAB institutes the IPR, that proceeding would resolve only one issue— whether the '894 Patent is obvious based on the patents and printed publications NuVasive presented in its IPR petition. The IPR would not resolve other key issues in this case, including; (i) whether the '844 Patent (for which NuVasive is not seeking IPR) is invalid; (ii) whether the '894 Patent is invalid on grounds other than obviousness based on the limited prior art available

to the PTAB, such as indefiniteness, lack of written description, or statutory bars to patentability (*see, e.g.*, D.I. 1 ¶¶ 15, 23); (iii) whether the '894 Patent is invalid based on prior art other than that submitted to the PTAB; and (iv) whether NuVasive infringes either the '894 or '844 Patents.

Timely resolution of these issues is critical because NMP is disparaging NuVasive based on its specious allegations.  Both in the public record and in its sales discussions, NMP falsely accuses NuVasive of stealing NMP's technology.  This smear campaign is causing an unjustified and potentially permanent alteration of NuVasive's position in the market.  Delaying resolution of these issues would therefore prejudice NuVasive.

<u>FACTUAL BACKGROUND</u>

On June 6, 2013, NMP filed a complaint in Superior Court for the State of California alleging that NuVasive misappropriated certain purported trade secrets of NMP.  Specifically, NMP alleged that in December 2008, NMP disclosed to NuVasive its plans to develop an "endotracheal electrode that employed conductive ink printed onto the tube" for purposes of monitoring the Recurrent Laryngeal Nerve ("RLN") during surgeries of the neck and throat (FAC[3] ¶ 13.)  NMP further alleged that NuVasive misappropriated NMP's trade secrets by designing its own endotracheal tube with conductive ink electrodes.  (*Id.* ¶¶ 17-18.)  But printing conductive ink electrodes on endotracheal tubes for use in monitoring the RLN is no secret and NMP knows it.

As just one example, on June 18, 1991—seventeen years before NMP's alleged disclosures to NuVasive—the USPTO issued US Patent No. 5,024,228 (the "'228 Patent") to

---

[3]     Citations to "FAC" refer to NMP's First Amended Complaint in the California Action, attached as Exhibit C to the Kyle Decl.

Goldstone.[4]   The '228 Patent disclosed and claimed an endotracheal tube with exposed wire electrodes for monitoring the RLN, and with a portion of the lead wires functioning as insulated runners eventually connecting those electrodes to the monitoring equipment.   Importantly, the '228 Patent expressly defined "wires" as:   "[t]he term '*wires*' includes *any type* of electrically conducting lead suitable for use as an electrode, _including metal paint_… ."   (Kyle Decl. Ex. D at 5:14-21 (emphasis added); *id.* at 7:65-8:19 (claiming an "electrode wire" with an insulated "first wire portion" and an uninsulated "second wire portion").)

In other words, the idea of using conductive paint or ink to fashion electrodes on endotracheal tubes had been public knowledge since 1991 and was already known to NMP and to NuVasive well-before NMP filed its patent applications.   NMP has admitted that it was aware of the '228 Patent by January 2009, and that NuVasive was aware of the '228 Patent by that time as well.   (FAC ¶ 15.)

When required to identify with specificity its trade secrets in the California Action, NMP identified only: (1) a prototype of its endotracheal tube allegedly provided to NuVasive in 2009, which NMP did not describe with any specificity at all; (2) a two-page "technical brief" describing an endotracheal tube, which the California court found was not sufficiently precise to constitute an adequate designation of trade secrets; (3) claims 1 through 7 of the '844 Patent; and (4) claims 1 through 19 of the '894 Patent.   The California court expressly found that the technical brief was coextensive with NMP's patents and did not contain anything beyond what the '844 and '894 Patents contained.   (Kyle Decl. Ex. B at 2.)   In a recent deposition, NMP's corporate designee also admitted that the technical brief was coextensive with the patents.

---

[4]      Ultimately, the '228 Patent was assigned to Medtronic Xomed.   (Kyle Decl. Ex. E at ¶¶ 8-9.)

(*Id.* Ex. F at 243:1-244:1.)  Given these developments, it became clear that NMP was really accusing NuVasive of infringing its patents.  Indeed, as discovery progressed in the California Action, NMP requested that NuVasive admit that it infringed the '894 and '844 Patents.  (*Id.* Ex. G.)

NuVasive therefore filed a petition for *inter partes* review of all claims of the '894 Patent on December 23, 2014.  On March 17, 2015, NMP *stipulated* to stay the California Action based on NuVasive's filing of its IPR petition.  (*See* D.I. 14 Ex. 4.)

During its various disputes with NuVasive, NMP has falsely represented that NuVasive stole the design of NMP's endotracheal tube and that NuVasive was infringing NMP's patents.  These misrepresentations have harmed and will continue to harm NuVasive's reputation in the market until NuVasive proves the falsity of NMP's accusations—that NMP's supposed inventions were nothing new and that NuVasive does not practice them in any case.

<u>ARGUMENT</u>

Contrary to NMP's arguments, a stay of a district court patent case is not "automatic" pending the outcome of a co-pending IPR.  *Viskase Corp. v. Am. Nat'l Can Co.*, 261 F.3d 1316, 1328 (Fed. Cir. 2001*)*; *see Comcast Cable Commc'ns Corp., LLC v. Finisar Corp.*, No. C-06-04206-WHA, 2007 U.S. Dist. LEXIS 103309, 2007 WL 1052883, at *4-5 (N.D. Cal. Apr. 5, 2007) (explaining that stays are not automatic because "federal infringement actions would be dogged by fits and starts . . . [and] should not be hijacked in this manner"); *Soverain Software LLC v. Amazon.com, Inc.*, 356 F. Supp. 2d 660, 662 (E.D. Tex. 2005) (observing that a per se rule "would invite parties to unilaterally derail timely patent case resolution").  Rather, the Court has vast discretion to deny such a stay.  *See Procter & Gamble Co. v. Kraft Foods Global, Inc.*, 549 F.3d 842, 848-49 (Fed. Cir. 2008) ("The Supreme Court has long recognized that district courts have broad discretion to manage their dockets, including the power to grant a stay of

proceedings.").  Moreover, because litigation and reexamination "are concepts not in conflict," the two actions may continue along parallel tracks.  *Ethicon*, 849 F.2d at 1427 (internal quotation omitted); *Straight Path IP Group, Inc. v. Vonage Holdings Corp*., No. 14-502 (JLL) (JAD), 2014 U.S. Dist. LEXIS 121328, 2014 WL 4271633, at *4 (D.N.J. Aug. 28, 2014) ("[N]o conflict [exists] . . . , despite the fact that the two forums may come to differing conclusions on the same patent; the PTO and the district courts apply different standards and come to different legal conclusions.").

The moving party bears the burden of showing that a stay is appropriate, *Netlist, Inc. v. Smart Storage Sys., Inc*., No. 13-cv-589-YGR, 2014 U.S. Dist. LEXIS 116979, 2014 WL 4145412, at *1 (N.D. Cal. Aug. 21, 2014).  Such showing must be based on more than the mere fact that a petition for IPR was filed.  *Automatic Mfg. Sys., Inc. v. Primera Tech., Inc. (Automatic Mfg. I)*, No. 6:12-cv-1727-Orl-37DAB, 2013 U.S. Dist. LEXIS 67790, 2013 WL 1969247, at *3 (M.D. Fla. May 13, 2013); *see Lifewatch Servs., Inc. v. Medicomp, Inc*., No. 6:09-cv-1909-Orl-31DAB, 2010 U.S. Dist. LEXIS 36194, 2010 WL 963202, at *4 (M.D. Fla. Mar. 16, 2010) ("[A] stay should ordinarily be denied unless there is a substantial question of patentability.").

With these general principles in mind, courts in the Third Circuit consider the following factors when deciding whether to stay a case based on a pending IPR:  (1) whether granting the stay will simplify the issues for trial; (2) the status of the litigation, particularly whether discovery is complete and a trial date has been set; and (3) whether a stay would cause the non-movant to suffer undue prejudice from any delay, or allow the movant to gain a clear tactical advantage.  *McRo, Inc. v. Bethesda Softworks LLC*, 2014 U.S. Dist. LEXIS 60313, at *7 (D. Del. May 1, 2014).  These factors do not support a stay here.

I.      A STAY IS NOT "AUTOMATIC."

NMP cannot rely on 35 U.S.C. § 315(a)(2) to "automatically" stay this case.  (D.I. 13 at 5.)  This is because NMP has not yet answered the Complaint, and the PTAB has yet to institute the IPR.

Section 315(a)(2) provides important exceptions to the general rule providing for a stay of civil actions *challenging the validity of a patent* as to which the plaintiff has filed a petition for IPR.  One such exception is when "the patent owner files a civil action or counterclaim alleging that the petitioner or real party in interest has infringed the patent." 35 U.S.C. § 315(a)(2)(B).

NuVasive has brought a claim for declaratory judgment of non-infringement of the '894 Patent.  When NMP files its answer by May 24, 2015, it will have to either admit or deny that NuVasive infringes the '894 Patent and will have to assert any counterclaim for infringement because such a counterclaim would be compulsory.  Fed. R. Civ. P. 13(a).  Only after NMP files its answer and counterclaim (if any) will the Court know whether or not section 315(a)(2) actually mandates a stay of Count IV in the Complaint, i.e., invalidity of the '894 Patent.[5] NMP's attempt to stay this case now, before it has even responded to the Complaint, is simply a tactical maneuver designed to avoid taking a position on non-infringement.

NMP is also incorrect when it suggests that section 315(a)(2) has any application to NuVasive's claim for a declaratory judgment of non-infringement of the '894 Patent (Count III in the Complaint).[6] (D.I. 13 at 5.)  Section 315(a)(2) only applies to "a civil action challenging

---

[5]      Notably, 35 U.S.C. section 315(a) provides that only a civil action "challenging the validity of a claim of the patent" would be subject to the automatic stay.  Accordingly, the Court could refuse to stay the case as to any claim other than Count IV regarding invalidity of the '894 Patent.

[6]      NMP tacitly concedes that section 315(a)(2) has no application to Counts I and II in the Complaint regarding non infringement and invalidity of the '844 Patent.  (D.I. 13 at 5.)
(Continued . . .)

the validity of a claim of the patent. . ."  A claim for declaratory judgment of non-infringement of a patent is not a claim challenging the validity of the patent, and therefore should not be stayed under section 315(a)(2).  *See Ariosa Diagnostics v. Isis Innovation Ltd.*, PTAB No. IPR2012-00022, slip op. at 7 (Feb. 12, 2013) ("A civil action for a declaratory judgment of non-infringement is not a civil action challenging the validity of a patent.").  Even if the Court concludes that a stay of the single count challenging the validity of the '894 Patent is required under section 315(a)(2), such a stay would not cover NuVasive's claim for declaratory judgment of non-infringement of the '894 Patent, nor would it cover Counts I and II for non-infringement and invalidity of the '844 Patent.

## II. THE COURT SHOULD EXERCISE ITS DISCRETION NOT TO STAY THE CASE AT THIS TIME.

The Court should also deny NMP's request to impose a discretionary stay because the relevant factors do not warrant a stay.  ***First***, NMP's motion is premature because the PTAB has not decided whether to institute IPR for the '894 Patent yet.  ***Second***, a stay will not simplify the litigation because important questions of invalidity and infringement will be unaffected by the outcome of any IPR.  ***Third***, a stay is not equitable under the circumstances of this case.  NMP is currently harming NuVasive's reputation by disparaging NuVasive and misrepresenting that NuVasive is illegally using NMP's technology.  NMP only brought this Motion at this juncture to avoid taking a position as to whether or not it has any basis to allege that NuVasive's infringes its patent claims, which will have profound implications on the California Action.  A stay would therefore prejudice NuVasive and unfairly benefit NMP.

---

(. . . continued)
    Accordingly, the case should proceed on those Counts regardless of the outcome of this Motion.

A.      NMP's Motion to Stay Is Premature.

The PTAB has not decided whether to institute IPR proceedings on the '894 Patent.  The deadline for its decision is not until July 21, 2015.  35 U.S.C. § 314(b).  At this time, there is no guarantee that the PTAB will even move forward with the IPR.  Staying the case now will merely cause unwarranted delay and waste resources that could be used to begin discovery and allow the parties to frame the issues in dispute.  Courts in this district routinely deny as premature motions to stay filed before the PTAB has instituted IPR.  *See TruePosition, Inc.* 2013 U.S. Dist. LEXIS 150764, at *17 ("Since the *inter partes* review request is still pending before the PTO with a potential delay until December 4, 2013 for a grant or denial, this motion is premature."); *McRo, Inc.*, 2014 U.S. Dist. LEXIS 60313, at *10 (denying motion to stay where PTAB had not yet decided whether to institute IPR proceedings and discovery was in its earliest stages and therefore "even if the PTO ultimately institutes IPR proceedings. . . having proceeded forward with initial discovery in the meantime will not be unduly harmful to the efficient management of these proceedings"); *see also Straight Path IP Group, Inc. v. Vonage Holdings Corp.*, C.A. No. 14-502 (JLL (JAD), 2014 U.S. Dist. LEXIS 121328, at *5-6 (D.N.J. Aug. 28, 2014) (same); *Trover Group, Inc. v. Dedicated Micros USA*, No. 2:13-CV-1047-WCB, 2015 U.S. Dist. LEXIS 29572, at *16 (E.D. Tex. Mar. 11, 2015) (same, collecting cases).

B.      A Stay Will Not Simplify this Litigation.

Even if the PTAB decides to institute an IPR of the '894 Patent, it will address only one issue:  obviousness of the '894 Patent based on the limited prior art that NuVasive presented in its petition.  Many other critical issues in this case will remain regardless of any action the PTAB takes on the '894 Patent.

1.      An IPR Would Not Simplify Important Invalidity
        Issues.

NMP ignores the many dissimilarities between this case and the IPR.  It focuses instead
only on the one issue the proceedings have in common—invalidity of the '894 Patent.  As a
result, NMP is unable to point to *any* supposed simplification that would not occur in *every*
parallel civil action and IPR proceeding.  For example, every IPR proceeding may amend claim
scope and may invalidate the subject patent.  (*See* D.I. 13 at 7-8.)  Yet, clearly, not every IPR
proceeding mandates a stay of a parallel civil action.  *See Lifewatch Servs., Inc.*, 2010 WL
963202, at *4 ("[A] stay should ordinarily be denied unless there is a substantial question of
patentability.").  Thus, NMP points to no simplification of issues *particular to this case* that
would warrant a stay.  Instead, it merely speculates generally about potential amendment or
invalidity of the '894 Patent.  Simple redundancy between one patent in this civil case and an (as
yet un-instituted) IPR proceeding does not warrant a stay.  *See Slip Track Systems, Inc. v. Metal
Lite, Inc.*, 159 F.3d 1337, 1341 (Fed. Cir. 1998) (noting that where copending actions are
"neither duplicative nor dependent on one another, there is neither any need nor any
justification" for a stay); *Automatic Mfg. Sys., Inc.*, 2013 U.S. Dist. LEXIS 67790, at *7
("[A] stay of a patent infringement action is not warranted when based on nothing more than the
fact that a petition for *inter partes* review was filed in the USPTO.").

The differences between the IPR proceeding and this case, on the other hand, are
profound.  For one thing, any IPR proceeding that might be instituted would only address the
'894 Patent, and will not invalidate or result in amendment of the '844 Patent.  Courts have
recognized that stays are unnecessary when IPR proceedings involve less than all asserted
patents or claims.  *See Davol, Inc. v. Atrium Med. Corp.*, C.A. No. 12-958-GMS, U.S. Dist.
LEXIS 84533, 2013 WL 3013343, at *17 (D. Del. June 17, 2013) (denying stay where pending

IPR petitions pertained to only two of the three patents in suit and noting that "allowing litigation to proceed solely with respect to that patent while the parties await a PTO decision on the other two patents-in-suit would invite substantial inefficiency"); *TruePosition, Inc. v. Polaris Wireless, Inc.*, C.A. No. 12-646-RGA/MPT, 2013 U.S. Dist. LEXIS 150764, 2013 WL 5701529, at *13 (D. Del. Oct. 21, 2013) ("This court has noted where the scope of the issues in litigation substantially exceeds the scope of the issues on review, a stay is disfavored.  Here, claim 98 and specific challenges to the remaining claims subject to the IPR petition fall outside of the scope of IPR."); *Card-Monroe Corp. v. Tuftco Corp.*, No. 1:14-cv-292, 2015 U.S. Dist. LEXIS 31459, at *10 (E.D. Tenn. Feb. 19, 2015 ("[E]ven if IPR was granted to Patent 505, the benefit of such a review would be limited because it would only have the potential to resolve issues with one of the three patents at issue in the instant litigation.").

Moreover, even as to the '894 Patent, the scope of any IPR proceeding will be fundamentally different than the invalidity issues in this case.  The PTAB will not—and cannot—address certain grounds of invalidity for the '894 Patent, including indefiniteness and lack of written description, which are likely to be at issue in this litigation.  (*See* D.I. 1 ¶¶ 15, 23.)  When these grounds for invalidity are at issue, stays are disfavored.  *See TruePosition, Inc. v. Polaris Wireless, Inc.*, C.A. No. 12-646-RGA/MPT, 2013 U.S. Dist. LEXIS 150764, 2013 WL 5701529, at *13 (D. Del. Oct. 21, 2013) ("[A] stay is appropriate when the only issues for trial overlap with those to be reviewed by the PTO, but where other challenges, including § 112 arguments, are presented, a stay is disfavored"); *Davol, Inc. v. Atrium Med. Corp.*, C.A. No. 12-958-GMS, U.S. Dist. LEXIS 84533, 2013 WL 3013343, at *16 (D. Del. June 17, 2013) (noting that any potential simplification from IPR was undercut by the fact that infringement, damages, validity under 35 U.S.C. § 112, and equitable defenses cannot be resolved before the PTO).

NuVasive will also be able to present prior art in this litigation that it cannot present in an IPR, such as earlier products and other prior art that does not consist of patents or printed publications.  *See* 35 U.S.C. § 311 (b) ("A petitioner in an inter partes review may request to cancel as unpatentable 1 or more claims of a patent only on a ground that could be raised under section 102 or 103 and only on the basis of prior art consisting of patents or printed publications."); *SoftView LLC v. Apple Inc*., 2012 U.S. Dist. LEXIS 104677, at *9-10, 2012 WL 3061027 (D. Del. July 26, 2012) (denying stay in part because of early stage of reexamination proceedings and fact that scope of invalidity issues in district court case exceeded those in reexamination).

NuVasive seeks access to a forum in which it can establish all the ways in which the '894 Patent is invalid.  *Automatic Mfg. Sys*., 2013 U.S. Dist. LEXIS 67790, at *8 ("Even if the USPTO decides to initiate a review, the law makes clear that the review itself is limited to anticipation and obviousness, which are only two of the many, many defenses to patent infringement."); *SenoRx, Inc. v. Hologic, Inc*., 2013 U.S. Dist. LEXIS 8044, at *12-13, 2013 WL 144255 (D. Del. Jan. 11, 2013) ("The more that the scope of the issues to be resolved during the litigation exceeds the scope of the issues that can be examined during the reexamination proceedings, the greater this cuts against a finding that the reexamination proceedings will lead to simplification of the issues.").  Regardless of its outcome, an IPR on the '894 Patent, if instituted, will not resolve critical invalidity issues.

2.      An IPR Would Not Simplify Non-Infringement.

NMP also ignores the fact that this action will resolve the issue of non-infringement, which the PTAB cannot resolve in an IPR.  NuVasive filed this action because NMP has asserted that NuVasive stole its technology, which allegedly is described and claimed in the patents-in-suit.  There is no reason to delay resolution of non-infringement for years while the PTAB

determines the validity of only one of the two patents at issue here.  Indeed, NuVasive is confident that non-infringement will be resolved on summary judgment.  Resolution of this issue should not be delayed for years pending resolution of an IPR.  *See Nippon Steel & Sumito Metal Corp. v. POSCO*, C.A. No. 12-2429 (DMC), 2013 U.S. Dist. LEXIS 62710, at *16 (D.N.J. May 2, 2013) ("[W]hen…the landscape of the relevant market is changing, it presents a circumstance where justice demands that the allegedly aggrieved party be given an opportunity to litigate its claims—and sooner rather than later.").

        C.      A Stay Would Unfairly Prejudice NuVasive and Reward NMP's Tactical Maneuvering.

Prejudice considerations also favor a stay.  Although this case is still in its early stages, the PTAB has not even determined whether or not to institute an IPR, and NMP has been making false accusations against NuVasive, which is damaging even though the parties pursue different market segments—NMP operates in the Ear, Nose and Throat market, while NuVasive operates in the spine market.  *See SenoRx, Inc*., 2013 U.S. Dist. LEXIS 8044, at *21-22 ("This Court has analyzed whether a plaintiff would suffer undue prejudice (and whether a defendant would gain an unfair tactical advantage) if a stay is granted by examining four factors: (1) the timing of the request for reexamination; (2) the timing of the request for stay; (3) the status of reexamination proceedings; and (4) the relationship of the parties.").  Under these circumstances, courts routinely deny motions to stay.  Here, NuVasive petitioned for IPR five months ago and the PTAB may not decide to initiate IPR (if at all) until July 2015, nearly two months from now.  NMP filed its motion to stay *before* it has even responded to the complaint and before the PTAB has initiated the IPR.  The factor of the relationship of the parties here is enough to show the prejudice a stay would impose on NuVasive.

Timely resolution of non-infringement **and** invalidity as to **both** patents is critical.  For the last several years, NMP has been publicly accusing NuVasive of stealing its technology in an attempt to discredit NuVasive.  (*See* FAC ¶ 18 ("NuVasive began marketing, distributing and selling EMG electrode tubes based on or derived from Neurovision Medical's novel conductive ink overlay design. . ."); Kyle Decl. Ex. H [Patent Owner Preliminary Response] at 2 ("[W]ithout Neurovision's knowledge or consent, NuVasive immediately misappropriated Neurovision's technology…as its own."); D.I. 13 at 2 ("NuVasive faced an approaching trial for theft of trade secrets Neurovision confidentially disclosed to it. . .").)  Thus, NuVasive filed this action, in part, to clear its name from NMP's baseless accusations.

Deferring resolution of NMP's allegations until the resolution of the potential '894 Patent IPR, potentially more than a year from now, would prejudice NuVasive and be patently unfair.  NMP's actions affect NuVasive's reputation.  Although NMP and NuVasive do not compete in the same markets, the circumstances here are similar to those where competition between the parties weighs heavily against a stay.  *See VirtualAgility Inc. v. Salesforce.com, Inc*., 759 F.3d 1307, 1318 (Fed. Cir. 2014) ("[C]ompetition between parties can weigh in favor of finding undue prejudice."); *Cooper Notification, Inc. v. Twitter, Inc.,* No. 09-865, 2010 U.S. Dist. LEXIS 131385, 2010 WL 5140573, at *5 (D. Del. Dec. 13, 2010) ("Courts are reluctant to stay proceedings where the parties are direct competitors.").  Alteration of the marketplace could cause NuVasive harm that a money judgment cannot remedy.[7]  *See Nippon Steel & Sumito Metal Corp. v. POSCO*, C.A. No. 12-2429 (DMC), 2013 U.S. Dist. LEXIS 62710, at *16 (D.N.J. May 2, 2013) (noting that "it would be extremely prejudicial to force the company to the litigation sideline while its business market is subjected to a potentially permanent alteration.");

---

[7]       NuVasive does not seek money damages in this case in any event.

*Davol, Inc. v. Atrium Med. Corp.*, C.A. No. 12-958-GMS, U.S. Dist. LEXIS 84533, 2013 WL 3013343, at *9-15 (D. Del. June 17, 2013) (denying stay based in part on competitive relationship between the parties).

By contrast, resolving non-infringement and invalidity now will cause NMP no prejudice. *See Personalized User Model, L.L.P. v. Google, Inc.*, C.A. No. 09-525-LPS, 2012 U.S. Dist. LEXIS 155815, 2012 WL 5379106, at *2 (D. Del. Oct. 31, 2012) (noting that the moving party had made no such showing of clear hardship or inequity when the only prejudice it argued it would incur in proceeding with the litigation was added litigation cost); *FMC Corp. v. Summit Agro USA, LLC*, 2014 U.S. Dist. LEXIS 105304, at *21, 2014 WL 3703629 (D. Del. July 21, 2014) (same). NMP will have a full and fair opportunity to litigate non-infringement and invalidity in this action, as well as the non-overlapping invalidity issues before the PTAB.

In fact, imposing a stay before NMP files its answer would give NMP an unfair tactical advantage. When it answers, NMP will have to either allege infringement by NuVasive (which NuVasive believes it cannot truthfully do) or admit that NuVasive does not infringe, and in the process also admit that NuVasive does not practice NMP's alleged trade secrets. (*See* Kyle Decl. Ex. B ("Plaintiff's disclosure of trade secrets identifies Claims 1 through 7 as set forth in Patent No. US 8,467,844 B2 and Claims 1 through 19 as set forth in Patent No. US 8,634,894 B2.").) Delaying the deadline for NMP to admit or deny non-infringement would give NMP the unfair tactical advantage of being able to continue to publicly disparage NuVasive while at the same time avoiding addressing NuVasive's non-infringement claims in court.

### III.   THIS CASE PRESENTS DIFFERENT ISSUES THAN THE CALIFORNIA ACTION.

NMP attempts to paint NuVasive in a negative light by suggesting that "undisclosed tactical reasons" prompted the stay of the California Action before the filing this case. To the

contrary, it was NMP's questionable litigation conduct that prompted the filing of this case. As explained above, it is simple to understand why NuVasive filed this action—to address NMP's claims that NuVasive stole the technology allegedly embodied in the patents-in-suit in a forum that can afford NuVasive complete relief.  The California court may have been able to resolve NMP's trade secret claims, but there is no question that the California court could not resolve the federal questions of non-infringement and invalidity.

By contrast, resolution of the patent-related issues by this Court will likely resolve NMP's trade secret claims, as NMP tacitly admitted by *stipulating* to stay the California Action. NMP has essentially admitted and the California court found that its trade secrets (if any) are coextensive with the claims of the patents-in-suit.  (Kyle Decl. Exs. A & B.)  Therefore, if NuVasive does not practice NMP's patents, it follows that it did not steal NMP's trade secrets. And, if NMP's patents are invalid because they were obvious and/or anticipated, then the alleged inventions were already in the public domain and therefore cannot be trade "secrets."

CONCLUSION

NMP initiated this "war" between the parties by claiming that NuVasive stole its technology.  As those "trade secret" claims sharpened, however, it became apparent that NMP was really accusing NuVasive of practicing the alleged inventions claimed in the patents-in-suit. Therefore, NuVasive initiated a challenge against one of the patents before the PTAB, NMP stipulated to stay the California Action, and NuVasive filed this action to resolve the pending disputes between the parties.  The Court should not delay resolution of these issues in favor of an IPR proceeding which the PTAB has yet to institute and which will leave numerous issues and disputes alive for this Court to resolve regardless of its outcome.

- 17 -

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Thomas C. Grimm*

Thomas C. Grimm (#1098)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
tgrimm@mnat.com
*Attorneys for NuVasive, Inc.*

OF COUNSEL:

John S. Kyle
KYLE HARRIS LLP
450 B Street, Suite 1410
San Diego, CA  92101
(619) 600-0086

May 11, 2015
9142421